**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | |
|---|---|
| ALTHEA J. STROUD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:19-cv-95-CDP |
| FARR RENTALS, LLC, et al., | ) ) ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before me upon review of a second amended complaint filed by plaintiff Althea J. Stroud, who is proceeding herein *pro se* and *in forma pauperis*. For the reasons explained below, I will dismiss this case at this time, without prejudice.

### **Background**

Plaintiff initiated this action on December 23, 2019 by filing a complaint against Farr Rentals, LLC ("Farr Rentals"); Matthew Farr and Katie Farr ("the Farrs"); the City of Canton, Missouri ("the City"); and Jarrod Phillips, the Mayor of Canton. Plaintiff sought and was granted leave to proceed *in forma pauperis*, and I reviewed the complaint pursuant to 28 U.S.C. § 1915(e). In the complaint, plaintiff averred she brought the case under the Fair Housing Act ("FHA") and other federal statutes, including 42 U.S.C. §§ 1981, 1982 and 1983, and the Toxic Substances Control Act ("TSCA"). She also sought to enforce criminal statutes, and regulations established by the Department of Housing and Urban Development ("HUD").

The complaint was largely composed of conclusory statements with no supporting facts. However, it was clear that plaintiff believed the defendants subjected her to discrimination and

retaliation in relation to property she rented from Farr Rentals and the Farrs. As fully summarized in my March 24, 2020 order, plaintiff's claims against Farr Rentals and the Farrs arose from an alleged failure to maintain and repair the rental property, and the termination of plaintiff's tenancy. Plaintiff's claims against the City and Phillips arose from a failure to inspect the rental property at her request, and a referral to a dedicated home inspection service company.

Upon initial review, I determined that the complaint was subject to dismissal for failure to state a claim upon which relief may be granted because plaintiff had failed to allege facts in support of her claims. As fully explained in my March 24, 2020 order, I determined that plaintiff failed to plead facts permitting the inference that she was actually treated differently on the basis of race or any other impermissible basis, as necessary to state a discrimination claim under the FHA. I also determined that plaintiff failed to plead facts permitting the inference of a causal connection between her engagement in protected activity and the termination of her tenancy, as required to state a plausible retaliation claim under the FHA. In so determining, I noted that plaintiff failed to allege even the most basic of facts, such as the defendants were aware that plaintiff had filed complaints against them. I also determined that the complaint failed to state a plausible claim under 42 U.S.C. §§ 1981 or 1982 because plaintiff failed to allege facts permitting the inference that she was actually treated differently because of her race, and that the complaint failed to state a claim under 42 U.S.C. § 1983 because neither Farr Rentals nor the Farrs were state actors and there were no allegations that the City or Phillips violated plaintiff's federally-protected rights. Finally, I concluded that plaintiff was not entitled to relief under the TSCA, and that she could not bring a private right of action to enforce criminal statutes or HUD regulations.

In my March 24, 2020 order, I clearly explained the reasons the complaint was subject to dismissal, and gave plaintiff the opportunity to file an amended complaint. I gave plaintiff clear instructions about how to prepare the amended complaint, and advised her of the necessity of alleging facts in support of her claims. I also cautioned her that the amended complaint would fully replace the original. After receiving an extension of time, plaintiff filed an amended complaint on April 21, 2020. Shortly thereafter, she filed a motion titled "Motion for Substitute to File New Amended Complaint." (ECF No. 16). She did not submit an amended pleading with her motion. I granted plaintiff's motion, and gave her the opportunity to file a second amended complaint. In so doing, I advised her that the second amended complaint would replace the original and the amended complaint. On June 23, 2020, plaintiff filed a second amended complaint, which I now review pursuant to 28 U.S.C. § 1915(e).

**Legal Standard**

This Court is required to dismiss a complaint filed *in forma pauperis* if, *inter alia*, it fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S at 556). *See also* Fed. R. Civ. P. 8(a)(2) (a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief.").

The pleading standard of Rule 8 does not require "detailed factual allegations," but it does demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). While courts must assume the veracity of well-pleaded facts, that tenet is inapplicable to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law, *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980), and courts are not required to assume facts that are not alleged. *Stone*, 364 F.3d at 914-15.

**The Second Amended Complaint**

Plaintiff filed the sixteen-count second amended complaint against Farr Rentals and the City, and against Phillips in his official capacity. It is apparent that plaintiff's claims are related to residential property she rented from Farr Rentals. However, while plaintiff mentions a "rental agreement," she provides no details of such agreement, such as when her tenancy began and

ended. (ECF No. 20 at 9). She invokes this Court's federal question jurisdiction and lists numerous authorities, but in setting forth her statement of claim, she clearly indicates that her claims against the City and Phillips are brought pursuant to the FHA and 42 U.S.C. § 1981, and her claims against Farr Rentals are brought pursuant to the FHA, 42 U.S.C. §§ 1981, 1982 and 1983, and state law.

Plaintiff alleges she is a member of a protected class as an African American. She also alleges that her children are bi-racial, and that her husband has an unidentified chronic condition. In counts I through VII, plaintiff claims that the City and Phillips discriminated against her and her children on the basis of race, in violation of 42 U.S.C. § 1981 and the FHA, by failing to provide services afforded to white residents; namely, inspecting the rental property at her request. She alleges that the City's population is mostly white, and claims the City and Phillips "discriminated against her in services received and failed to inspect the rental dwelling because of her race/African American and because her children are bi-racial." (ECF No. 20 at 7). She claims the City and Phillips "failed and refused to inspect the rental property of defects of" ventilation, electrical hazards, lead, and sewer gas "because of her race and national origin/African American and that of her bi-racial kids." *Id.* Plaintiff also claims that the City "engaged in a pattern or practice of conduct, including discrimination, that deprived plaintiff and her bi-racial children of rights, privileges, and immunities secured and protected by the United States Constitution and federal law." *Id.* at 13. She also claims that the City and Phillips discriminated against her on the basis of her race and her children's races "by depriving her of services by racially steering her to a realtor for the inspection." *Id.* at 8.

5

> In support of her claims against the City and Phillips, plaintiff writes:
>
> The City regulates renters and rental property. Plaintiff spoke with two representatives of the City on or around 4-13-2018. I spoke with a city clerk, a representative of the City, who told me the City offered inspections for rentals. She told me I had to request an inspection in writing addressed to the mayor before the building inspector will inspect rentals so that they'd be kept safe. I hand delivered this request to her.
>
> On or around 4-16-2018, I spoke with the building inspector, a representative of the City, who made an appointment for an inspection and he told me that the City offered inspections for rentals. He called back later and told me, that he couldn't do the inspection and that I needed to get approval from the Mayor first. The office/City knew that I was black and had bi-racial kids, which is the reason for the reversal of position and the City doesn't do inspections for black residents.
>
> FHA is covered under this section in that the City has requirements to make sure businesses offering housing complies with housing codes, ordinances, and or statutes, etc.

*Id.* at 13.

Counts VIII through XVI are claims of discrimination and retaliation against Farr Rentals, and are brought pursuant to the FHA, and 42 U.S.C. §§ 1981, 1982 and 1983. Plaintiff identifies Farr Rentals as "white property owners." *Id.* at 9. She claims that Farr Rentals discriminated against her on the basis of race by "failing and refusing" to maintain the rental unit and remedy defects, and by evicting her. *Id.* Plaintiff lists defects in the rental unit, including a defective dryer vent and bathroom exhaust fan, mold, electrical hazards, plumbing issues, lead paint and pipes, leaky faucets, falling ceiling, sewer gas, radon, a broken window, HVAC cleaning and repair, and mouse infestation. She does not allege that she notified Farr Rentals of any defects or requested repairs.

Plaintiff also claims that Farr Rentals "discriminated against her on a whistleblower account when she exercised her rights because she complained about the condition of the rental

6

property about them to the EPA . . . the City, The Health Department, HUD and the Attorney General's Office Plaintiff [*sic*] complained to them before termination of tenancy by providing notice because of her race and national origin/African-American and that of her bi-racial kids."

*Id.* at 12. Plaintiff writes:

> Plaintiff alleges that Farr Rentals took action and discriminated against her and her husband because of a chronic condition that significantly impairs major life activities because of her race and national origin/African-American and that of her bi-racial kids.
> . . .
>
> The decision to terminate plaintiff's tenancy was made by defendant[s] Farr Rentals for the purpose of retaliating against her for being a whistleblower (complaining about the conditions of the property to the Attorney General's Office, the City, The EPA, HUD and the Health Department and for exercising her (Fair Housing rights) against them. The defendant[s] carried out the decision to terminate plaintiff with an unlawful eviction to protect themselves from violation of implied warranty of habitability, FHA, MMPA, and MCHA by the means described actions, and their agreement and plan to do the same defendant[s] have violated 42 U.S.C. 1981, 1982, 1983, 3601-3631.

*Id.* at 12-13. Plaintiff does not allege that Farr Rentals was aware of the complaints, and she identifies no particular "chronic condition." She does not describe the circumstances surrounding the termination of her tenancy. Finally, plaintiff asserts, in conclusory fashion, claims premised upon state law. As relief, plaintiff seeks $50,000 in actual damages, and $50,000 in compensatory damages to compensate her for emotional pain and suffering.

7

**Discussion**

**A. The FHA[1]**

The FHA makes it unlawful to discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of race, color, religion, sex, familial status, national origin, or handicap. 42 U.S.C. § 3604(b), (f). It also "prohibits property owners and municipalities from blocking or impeding the provision of housing on the basis of race, color, religion, sex, familial status, or national origin." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010) (citing 42 U.S.C. § 3604(a)-(b)). A tenant subjected to discrimination in violation of the FHA can bring a private cause of action for damages. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003).

Plaintiff's FHA discrimination claims against the City and Phillips are premised upon a failure to inspect the rental property at her request, and being referred to a realtor. In support, plaintiff states that the City has a mostly white population and a policy or practice of engaging in discrimination, and that her inspection request was denied on the basis of race. Plaintiff's FHA

---

[1] In the second amended complaint, plaintiff cites the Civil Rights Act of 1866 and the Civil Rights Act of 1968. However, the portions thereof that are relevant to this case were codified into the Fair Housing Act. As a result, I do not interpret the second amended complaint as bringing separate causes of action under the relevant portions of the Civil Rights Act of 1866 or the Civil Rights Act of 1968. *See Williams v. Matthews Co.*, 499 F.2d 819, 825 (8th Cir. 1974) ("the Fair Housing Title of the Civil Rights Act of 1968 and the 1866 Civil Rights Act together comprehensively spell out the right of an individual to rent or purchase housing without suffering discrimination and to obtain federal enforcement of that fundamental guarantee."). However, to the extent the second amended complaint can be interpreted to bring separate causes of action, such claims would fail due to plaintiff's failure to allege facts permitting the inference that she suffered racial discrimination, as discussed below.

discrimination claims against Farr Rentals are premised upon the failure to perform maintenance and repairs at the rental property, and the termination of plaintiff's tenancy.

Despite being previously advised of the necessity of doing so, plaintiff has failed to allege facts in support of her FHA discrimination claims. Plaintiff alleges no facts explaining the basis for her belief that she was treated differently on the basis of race, or any other impermissible basis. In fact, plaintiff's allegations in support of her claims against the City and Phillips establish that the building inspector did not inspect the property because plaintiff had not obtained approval from the Mayor, not because of race. While plaintiff alleges she submitted an inspection request to the Mayor, she alleges nothing tending to show he ignored or denied it on the basis of race, or any other impermissible basis. Additionally, plaintiff alleges nothing tending to show the existence of a City policy or practice that adversely impacted members of a protected class. Finally, plaintiff does not allege that she notified Farr Rentals of any defects or requested repairs, nor does she describe any conduct from which it could be inferred that Farr Rentals refused to conduct maintenance or repairs on an impermissible basis.

The only allegations that might demonstrate plaintiff suffered discrimination in violation of the FHA are that the City has a mostly white population and Farr Rentals are white property owners, and they "discriminated" against her. Such allegations are nothing more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has found deficient, and that this Court is not required to presume true. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

Next, plaintiff claims that Farr Rentals retaliated against her in violation of the FHA by terminating her tenancy because she filed complaints about the condition of the property.

9

Unlawful conduct under the FHA includes "retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." *Burshteyn v. Cmty. Hous. Ass'n, Inc.*, 2020 WL 529308, at *5 (E.D. Mo. Feb. 3, 2020) (quoting 24 C.F.R. § 100.400(c)(5)). To state a claim for retaliation under the FHA, a plaintiff must show that (1) she engaged in a protected activity; (2) defendants subjected her to an adverse action; and (3) a causal link exists between the two. *Id.* (citing *Wolf v. Hoene Ridge Subdivision*, 2015 WL 8665406, at *3 (E.D. Mo. Dec. 11, 2015)).

Despite being previously advised of the necessity of doing so, plaintiff has alleged no facts permitting the inference of a causal connection between any complaint and the termination of her tenancy. As in the original complaint, plaintiff does not allege that Farr Rentals was aware she had filed complaints. Plaintiff's only allegations that might demonstrate she suffered retaliation in violation of the FHA are that Farr Rentals terminated her tenancy "for the purpose of retaliating against her." (ECF No. 20 at 13). As above, this is merely a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has found deficient, and that this Court is not required to presume true. *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

      **B.**      **42 U.S.C. § 1981**

Section 1981 of Title 42 guarantees the right to make and enforce contracts on a nondiscriminatory basis. The elements of a § 1981 claim are "(1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity." *Daniels v. Dillards, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004). Discrimination in housing may violate § 1981. *See Jones v. Alfred H. Mayer Co.*,

392 U.S. 409, 441-43 (1968). Here, plaintiff has alleged no facts permitting the inference that the City, Phillips, or Farr Rentals discriminated against her on the basis of race. She has therefore failed to state a plausible § 1981 claim. *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (liability under § 1981 is limited to purposeful discrimination).

C. **42 U.S.C. § 1982**

"Title 42 U.S.C. § 1982 prohibits all racial discrimination, private and public, in the rental or sale of real estate." *Hoover v. United States Dep't of Hous. & Urban Dev.*, 1990 WL 312545, at *4 (E.D. Mo. May 23, 1990); *see* 42 U.S.C. § 1982 ("All citizens of the United States shall have the same right, in every State and territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."). The elements of a § 1982 case parallel those of one brought pursuant to § 1981, and require a plaintiff to show: "(1) membership in a protected class; (2) discriminatory intent on the part of the defendant and (3) interference with the rights or benefits connected with the [rental] of property." *Daniels*, 373 F.3d at 887. Here, plaintiff has alleged no facts permitting the inference that Farr Rentals intended to discriminate against her. She therefore fails to state a claim under § 1982. *See id.*

D. **42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, plaintiff must allege sufficient facts to show that the defendant acted under color of state law, and that the defendant's allegedly wrongful conduct deprived her of a federally-protected right. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). Here, as in the original complaint, plaintiff's allegations do not state a § 1983 claim against any named defendant. Farr Rentals is alleged to be a private landlord, not a state actor.

*See Cain v. Aradhyula*, 2015 WL 5829819, at *2 (E.D. Mo. Oct. 6, 2015) (noting that there is no state action in an eviction action by a private landlord).

To the extent plaintiff can be understood to assert claims under § 1983 against the City and Phillips, such claims fail. Plaintiff's allegations do not establish that the City or Phillips engaged in wrongdoing that deprived her of a federally-protected right, and there can be no § 1983 claim against the City or Phillips based upon a violation of state law or municipal ordinances. *See Palmore v. City of Pac.*, 851 F. Supp. 2d 1162, 1169-70 (E.D. Mo. March 20, 2010) (even if intentional, violations of state law or municipal ordinances do not establish a constitutional violation for purposes of § 1983); *see e.g.*, *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (failure to report a suspected abuse as required by state statute does not state a claim for unconstitutional misconduct under § 1983); *Willmar Public Schools. Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 n.10 (8th Cir. 2010) (violation of state special education rules could not form basis of § 1983 claim).

### E. Additional Claims

In invoking this Court's federal question jurisdiction, plaintiff cites other authorities she believes are at issue in this case. She cites "42 U.S.C. § 12203(a)(b)," but she neither articulates a claim related to any failure to accommodate a disability, nor alleges facts permitting the inference that any defendant engaged in wrongdoing as a result of her assertion of rights under the Americans With Disabilities Act ("ADA"). *See* 42 U.S.C. § 12203(a)-(b), *Salitros v. Chrysler Corp.*, 306 F.3d 562, 569 (8th Cir. 2002) (citing *Schoffstall v Henderson,* 223 F.3d 818, 826 (8th Cir. 2000)). Plaintiff also cites 24 C.F.R. 100.400(c)(1). However, as explained in my March 24, 2020 order, plaintiff has no private cause of action to enforce HUD regulations. *See*

12

*Guesnon v. McHenry*, 539 F.2d 1075, 1077 (5th Cir. 1976) (there is no "precedent for the proposition that a private cause of action exists to remedy a violation of [a] HUD regulation"); *Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (same); *McDonald v. Green Tree Servicing, LLC*, 2014 WL 1260708, at *5 (E.D. Mich. Mar. 27, 2014) (same). Moreover, plaintiff points to no particular HUD regulation she believes was violated.

Plaintiff also states that Farr Rentals breached the rental agreement, violated the Missouri Merchandising Practices Act ("MMPA"), and violated the Implied Warranty of Habitability. In support, plaintiff alleges that Farr Rentals engaged in such misconduct on the basis of race, and she cites the FHA and 42 U.S.C. §§ 1981, 1982 and 1983. However, for the reasons discussed above, plaintiff's allegations do not state a plausible claim under the FHA or under those sections of Title 42. Additionally, plaintiff simply states that Farr Rentals breached the rental agreement and violated the MMPA and the Implied Warranty of Habitability without alleging facts tending to establish the elements of such claims. Instead, plaintiff offers only generally-asserted claims that are "little more than unadorned, the-defendant-unlawfully-harmed-me accusations that offer 'labels and conclusions' rather than set forth a claim upon which relief can be granted." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). Accordingly, she fails to state a plausible claim for breach of contract, or for violation of the MMPA or the Implied Warranty of Habitability.

## Conclusion

Having carefully reviewed and liberally construed the second amended complaint, I determine that it fails to state a claim upon which relief may be granted. Despite being previously advised of the necessity of doing so, plaintiff has failed to plead facts showing that

13

she is entitled to relief. Instead, she has offered only "unadorned, the-defendant-unlawfully-harmed-me" accusations that permit only the inference of the mere possibility of misconduct. *Id.* Although *pro se* complaints must be liberally construed, courts will not create facts or construct claims that have not been alleged. *See Stone*, 364 F.3d at 914-15. Even *pro se* plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Twombly*, 550 U.S. at 569-70. Finally, I conclude it would be futile to permit plaintiff a third opportunity to amend her complaint, as she did not cure the problems identified in the original complaint when given the opportunity to do so. I will therefore dismiss this case at this time, without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (ECF No. 13) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 13th day of October, 2020.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE